### State of Minnesota *vs.* John Klein.

November 25, 1876.

**Constitution—Inebriate Asylum Act.**—The case of *State* v. *Cassidy* (*ante* p. 312) followed as to the validity of Laws 1873, ch. 10.

*Same—Effect of General Laws on Charter of St. Paul.—Said law is applicable to the city of St. Paul as well as the rest of the state.* Prince v. City of St. Paul, *19 Minn. 267, followed and approved.*

After the decision of the next preceding case, sustaining the validity of Laws 1873, ch. 10, the defendant in this action was prosecuted in the municipal court of the city of St. Paul for selling liquor without having taken out the special license required by that act. At the trial he offered in evidence a license from the city of St. Paul, and also a license from the United States, both of which were excluded, and exceptions were duly taken. The defendant was convicted and sentenced, and appealed to this court.

*Henry F. Masterson* and *Wm. P. Murray*, for appellant.

The act is an act for raising taxes—a revenue, and not a police measure. A revenue measure may be distinguished from a police regulation by this : If the purpose be revenue, the person whose business or property is taxed may, upon payment of the tax, pursue his business or use his property without any other condition than such payment. If revenue be · the object, and the exaction a tax, the law will not enquire as to the character of the person, or restrict or regulate the pursuit of his business, or the use of the property taxed. A law imposing taxes avoids prohibition, restriction, or regulation of the thing taxed ; but a police regulation has exactly the opposite purposes and characteristics. Its object is prohibition, restriction, or regulation. Unlike a tax law, a police regulation enquires of the character of the person, and the beneficial or injurious nature of the things upon which it acts. Taxes are imposed to derive funds to defray the expenses of the government, without question whether the business or property taxed is beneficial or injurious to the public. Police regulations are established for the protection of life, health, liberty, property, reputation and public morals. They are intended to regulate something, and do not, like the act in question, leave the whole matter unregulated, requiring nothing but annual

contributions to a fund to defray part of the expenses of the government.

Thus a law providing for an examination and license to practise law or medicine, and regulating the conduct of practitioners, and requiring payment of a reasonable sum for this purpose, would be a police regulation, because its purpose would be to protect the community from the evils attending the practice of either profession by unlearned or dishonest men. But a law throwing the practice open, without supervision or regulation, to any and every one who would pay $10.00 a year for the support of the victims of unlearned or dishonest attorneys in the one case, or the sufferers from malpractice in the other, making the learned and skilful pay for the evil consequences of charlatans—that would be a revenue measure, as distinguished from a police regulation.

A law requiring licenses and supervision of druggists in the compounding and sale of medicines, and compelling them to pay the expense of such supervision, would be a police regulation; but a law which, without regard to the character of the person, and without supervision of the business, only required a druggist to pay a sum of money to support the sufferers from the errors and crimes of others, would not be a police regulation.

The law requiring a man wishing to marry to be sworn and examined as to his legal qualifications, and to take out a license and pay a fee therefor, is a police regulation, as it aims to protect society from the evils of improper marriages. But a law which, without enquiry or condition, would give a marriage license to anybody who would pay a prescribed sum to a fund for the victims of improper marriages, would be a revenue measure only.

The censorship of the press, is a police regulation, as it aims to protect reputation and preserve the peace, and a charge of a sum to pay the expense of censorship would not change its police character; but if the law prohibited the

publication of a newspaper by any person, of whatever character, without his first taking out a license, which any person, however depraved, could take out upon the mere payment of a sum of money to recompense sufferers from libels—this would be taxation, and not police regulation.

It would be a police regulation to require the makers of steam boilers to pass examination as to their care and skill, and to submit their boilers to an examination by experts before selling them, and to pay the expense of the proceeding; but a law which merely charged every boiler maker with a specified sum, as a license fee, for the support of an asylum for those who are made cripples by boiler explosions, would be a revenue measure.

Laws which restrict the carrying on of certain business and occupations to men of known prudence and good moral character, and to places where such business will be least obnoxious, as, for example, slaughter-houses, meat markets, soap factories, houses for storage and sale of dangerous explosive articles, etc., and which provide police care and oversight, and charge the person with the expense of such police supervision—all these are an exercise of the police power. But if the police care and oversight be taken away, and any one be allowed to do any or all these things, when and where he pleases, on payment to a fund to support the sufferers from the carelessness or recklessness of some, then the police character is lost, and it is a mere revenue measure.

Police regulations aim to prohibit, restrict, or regulate. Revenue measures regard nothing but the coveted sum of money, and allow the business free from regulation on payment of a fixed price. A regulation must regulate something, and a police regulation must police something. But this act does not regulate the sale of intoxicating drinks or anything else. It does not police that business, or anything else. It cannot have been intended as a police regulation, for it does not effect, or aim at, any police care

or supervision, and there is not a police attribute about it. It is not police of life, for it does not discriminate between those who sell to destroy life and those who sell to save it. It is not police of health, for it does not except sales made for necessary medicinal use, and for $10.00 it allows sales to those already suffering from delirium tremens. It is not police of morals, for it does not except sales for christian sacramental use, and yet for the price of $10.00 it will allow sales by gamblers and harlots for uses the farthest removed from moral considerations. For that sum this privilege, or license, can be bought, and no questions asked, and the purchaser, whatever his character or antecedents, may sell *ad libitum* when and where, and to whom, and for whatever purpose or use, he pleases. It is not police of trade, for it does not except sales for necessary mechanical or chemical uses, and it provides for no inspection whereby the people may be protected from adulterations or other frauds.

It is said that this additional charge of $10.00 tends to restrain the traffic by rendering it more expensive. But this is the effect of all taxation, and any tax, if high enough, will totally prohibit the business taxed. A tax on a farm is in this sense a restraint upon farming. The taxes which all merchants and mechanics pay tend to restrain and discourage their business; but this kind of restraint does not constitute police regulation, as distinguished from taxation. If it does, the prohibition of unequal taxation amounts to nothing, and will prohibit nothing. In this case the charge is too small to have been intended as a police restraint. The legislature must have known that $10.00 would neither prohibit nor restrain, and it could not have intended to prohibit or restrain the sale for medicinal or other meritorious uses. The evil of intemperance comes from the sale of intoxicating liquor as a beverage; but this law makes no distinction between sales for use as a beverage and sales for mechanical and manufacturing purposes.

In the *License Tax Cases*, 5 Wall. 462, the law was held

to be valid as a mere revenue measure, and the licenses are styled " mere receipts for taxes." And see Cooley Const. Lim. 201, 584–587 ; *Ash* v. *People*, 11 Mich. 347 ; *Mays* v. *City of Cincinnati*, 1 Ohio St. 268 ; *City of Cincinnati* v. *Bryson*, 15 Ohio, 625 ; *Lucas* v. *Lottery Commissioners*, 11 Gill & J. 490 ; *Kip* v. *City of Paterson*, 2 Dutcher, 298 ; *Bennett* v. *Borough of Birmingham*, 31 Penn. St. 15.

The requirement of payment for this additional license cannot be treated as an exercise of the police power, because defendant had already a complete license and permission for the same business, issued to him by the city of St. Paul, under legislative authority, in exercise of police power and as a police regulation, and one such license necessarily exhausts the police power. There can be but one license required as a police regulation of the same person, for the same business, at the same time and place ; for one, if lawful, exhausts that power, because a license implies permission, and a charge upon a business already licensed is necessarily an exercise of the taxing power.

The purpose of the provision requiring equality of taxation is to prevent the passage of laws for raising money for expenditures, which the majority of the legislature would never vote for if they and their friends to whom they looked for reëlection were to be taxed equally with all others. No argument is necessary to show that such a law could not be passed in these times if the burden of supporting the institution was to rest on all classes alike. The argument that all sellers of liquor or beer should pay this expenditure because the institution is made necessary by the misuse of some of the purchasers from some, and from some only, of the sellers, proves too much by showing that the constitutional restriction may be evaded, and is, in effect, no restriction at all. There is no article sold that may not be used by the purchaser in such a manner as will put the government to necessary expense, and no occupation which may not be pursued in such manner as to necessitate expense to

the government. Therefore all the expenses of government which grow out of the misuse by the purchaser of things bought, or out of the bad conduct of men in the pursuit of any business or occupation, may be met by a license for a fund to support such expenses. Thus all who sell razors and pistols shall bear all the expense consequent upon the murders committed with them by the purchasers. And as the expenses growing out of the misuse of things bought, or the misconduct of men in their business or occupation, include, in fact, all the expenses of government, taxes, so called, may be done away with altogether.

As an exercise of the power of taxation, the act is repugnant to Const. art. 9, § 1, for the tax is not "as nearly equal as may be." It is a tax on one class only for a matter concerning the general welfare of the state. It does not bear, and is not intended to bear, equally, in the sense of the constitution, on members of that one class. Equality, in the meaning of the constitution, is proportioned equality— equality of *per centum*. Equal, as here used, is a word of different meaning from uniform. A tax of $100.00 on each farm in the state, without regard to size or value, would be a uniform tax, and in one sense equal, but not in the sense in which the word is used in the constitution. A tax on merchants or traders of a uniform sum on each, without regard to the amount or value of their capital, their stock, or their business, would be unequal within the meaning of the constitution; otherwise the constitutional safeguard would amount to nothing.

Counsel also argued that the act, if valid at all, was inoperative within the city of St. Paul, as contravening the charter of the city, and that purpose not being expressly set forth in the act.

*Geo. P. Wilson,* Attorney General, for the State, upon the point that a uniform tax on all persons engaged in a designated business, irrespective of the amount of business done by each, was not void for want of equality, cited *Texas*

*Banking & Ins. Co.* v. *State,* 42 Texas, 636 ; *Youngblood* v. *Sexton,* 32 Mich. 406 ; *Durach's Appeal,* 62 Penn. St. 491 ; Cooley on Taxation, 128 ; *Comer* v. *Folsom,* 13 Minn. 219 ; *Sanborn* v. *Comm'rs of Rice Co.,* 9 Minn. 273 ; *City of Faribault* v. *Misener,* 20 Minn. 396.

*Chas. C. Willson,* also for the State, made the same points as in the argument of *State* v. *Cassidy.*

CORNELL, J. The principal question raised in this case, and very ably and elaborately discussed by the counsel for appellant, was directly presented and fully considered by the court, in the case of the *State* v. *Cassidy,* at the April term, 1875. Upon a careful review of the authorities cited, and full consideration of the arguments of the counsel, no good reason is discovered for doubting the correctness of the decision in that case.

The additional point is presented in this case that the law in question is not operative in the city of St. Paul because of the provision in its charter that " no general law of this state contravening the provisions of this act shall be considered as repealing, amending, or modifying the same unless such purpose be expressly set forth in such law." This point is fully met by the decision of this court in the case of *Prince* v. *City of St. Paul,* 19 Minn. 267, wherein it was held that a provision contained in a general law to the effect that " all insurance companies doing business in this state under its provisions shall annually at, etc., pay the treasurer of the state two per cent. on all premiums received, and that such sum so paid shall be in lieu of all other taxes or licenses to be collected from said companies in the state," operated as a repeal or modification of the charter of the city so far as it conferred or purported to confer any authority upon the common council to exact a license fee from any such company doing business in said city, although the purpose so to amend or repeal the city charter in this respect was not expressly and particularly stated in the general law.

The language of the statute under consideration is : "All keepers of saloons,   *   *   *   or other place where spirituous, vinous, or malt liquors are sold or kept for sale within this state, shall, before they shall be permitted to sell or dispose of such   *   *   *   liquors, take out   *   *   *   a special license, in addition to any and all other license or licenses which they are, or may be, required by any law, ordinance, or municipal regulation, to take out." Being thus alike as to the facts, it is clear that the present case must follow that of *Prince* v. *City of St. Paul* as to the point under consideration.

Judgment affirmed.

BERRY, J., *dissenting.* Upon the first point considered in the foregoing opinion I dissent from my brethren, being still of opinion, as in *State* v. *Cassidy*, that the purpose and effect of the law in question is the raising of a revenue, and not the regulation (under the police power) of the traffic in intoxicating liquors.